## BARNEY *v.* BALTIMORE CITY.

1. Part owners or tenants in common in real estate of which partition is asked in equity have an interest in the subject-matter of the suit, and in the relief sought, so intimately connected with that of their co-tenants, that if these cannot be subjected to the jurisdiction of the court, the bill will be dismissed.

2. The act of February 28th, 1839 (set forth in the case), has no application to suits where the parties stand in this position, but has reference, among others, to suits at law against joint obligors in contract, verbal or written.

3. A citizen of the District of Columbia cannot -be a party to a suit in the Federal courts, where the jurisdiction depends on the citizenship of the parties.

4. Although the simple fact that a transfer or conveyance of the subject of controversy is made for the purpose of vesting an interest in parties competent to litigate in the Federal courts, does not defeat the jurisdic-

tion, if the transaction vests the real interest in the grantee or assignee —yet, if the conveyance or assignment is colorable only, and the real interest remains in the grantor or assignor, the court cannot entertain jurisdiction of the case.

5. A decree in the Circuit Court dismissing a bill on the merits, will be reversed here if the Circuit Court had not jurisdiction, and a decree of dismissal without prejudice directed.

APPEAL from the Circuit Court for Maryland.

The Judiciary Act gives jurisdiction to the Circuit Court in controversies " between citizens of different *States;*" the District of Columbia, as it has been held, not coming within this term.

Another act—one of February 28th, 1839—enacts thus:

That where, in any suit at law or in equity, commenced in any court of the United States, there shall be several defendants, any one or more of whom shall not be inhabitants of or found within the district where the suit is brought or shall not voluntarily appear thereto, it shall be lawful for the court to entertain jurisdiction, and proceed to the trial and adjudication of such suit between the parties who may be properly before it. But the judgment or decree rendered therein shall not conclude or prejudice other parties not regularly served with process, or not voluntarily appearing to answer; and the non-joinder of parties who are not so inhabitants, or found within the district, shall constitute no manner of abatement or other objection to said suit.*

In this state of statutory law, Mary Barney, a citizen of Delaware, and one of the heirs of Samuel Chase, filed a bill in the Circuit Court of the United States for Maryland against the City of Baltimore and several individuals, co-heirs with her, certain of them being citizens of Maryland, and certain others (William, Matilda, and Ann Ridgely), *citizens of the District of Columbia,* to have a partition of real estate of which it was alleged that the said Chase died intestate: and to have also an account of rents and profits, with other incidental relief.

In the progress of the suit, the bill was dismissed as to the

---

* 5 Stat. at Large, 321.

three Ridgelys, citizens of the *District*, and an amended bill filed, stating that they had conveyed their interest in the property in controversy to one Samuel Chase Ridgely (also a defendant in the case), and who was a citizen of Maryland; it being admitted by writing filed that this conveyance was made for the purpose of conferring jurisdiction of the case on the Federal court, that it was without consideration, and that the grantee would, on request of the grantors, reconvey, to them. This Samuel Chase Ridgely made his will soon after the conveyance, devising the property to his three grantors, the District Ridgelys, and having died during the pendency of the suit, it went back to them. They then con-veyed to one Proud in the same way as they had previously conveyed to their co-defendant, S. C. Ridgely, it being ad-mitted that the conveyance was executed to remove a diffi-culty in the way of the exercise of the jurisdiction of the Circuit Court.

The Circuit Court dismissed the bill by a decree which on its face appeared to be a dismissal on the merits. This ap-peal was then taken.

Coming here, the case was elaborately argued on the merits. But a point of jurisdiction was raised and discussed previously. On this latter point the case was disposed of by this court; the question of merits not being reached.

On the point of jurisdiction, *Messrs. W. Schley and W. H. Norris, for the City of Baltimore, appellees,* contended that the appeal ought to be dismissed. Confessedly, citizens of the *District* could not be made parties to a suit in a Circuit Court of a State. Yet the three parties who here were such citi-zens, co-heirs with the complainant, were material parties to any bill for account or bill for partition. No complete de-cree could be made in their absence. The difficulty was sought to be remedied by the conveyances to S. C. Ridgely and Proud; but the grants not being real grants, could not aid the case.*

---

* Russell *v.* Clark's Executors, 7 Cranch, 98; Shields *v.* Barrow, 17 Howard, 139; Smith *v.* Kernochen, 7 Id. 216.

*Messrs. Brent and Williams, contra:*

Mary Barney, as one of the co-heirs of her father, has a right to sue for her individual though undivided interest. A decree for a division merely *fixes* the territorial right of each tenant. A decree as between the present parties would work no prejudice to those absent, nor to those over whom the court has no jurisdiction. They could be subject to no other inconvenience than of a second suit in another tribunal, which is no reason to refuse to decree in this case; the established doctrine being that the Circuit Court will not be ousted of its jurisdiction by the absence of a substantial party over whom it can exercise no power, if the interest *be separable* from those before it. An estate in common is in its nature separable. As to the account for rents and profits, that, as an incident, would follow the wake of the land.

But if this be otherwise, still Samuel Chase Ridgely, a citizen of Maryland, had become seized of all the estate of the three District Ridgelys, and during his life all the parties and all the interests were properly before the court. The court having jurisdiction of all the parties, so far as their character in regard to citizenship was concerned, will not lose it because of a subsequent change of residence. The devisees of S. C. R. stand therefore in his shoes, although residents of the District.* In addition, the District Ridgelys having, since the death of S. C. R., conveyed to Proud, a citizen of Maryland, a party to these proceedings—the only parties now are a citizen of Delaware, complainant, with all the defendants, citizens of Maryland. Plainly the jurisdiction exists.

Finally, the act of 28th February, 1839, places the matter beyond doubt.

Mr. Justice MILLER delivered the opinion of the court.

The first question which the record before us presents is, whether the Circuit Court of the District of Maryland, sitting as a court of chancery, could entertain jurisdiction of

---

* Morgan *v.* Morgan, 2 Wheaton, 290.

the case. The difficulty arises in reference to the interest of William, Ann, and Matilda Ridgely, in the subject-matter of the litigation, and resolves itself into two distinct inquiries, namely:

1. Can a court of chancery render a decree upon a bill of this character without having before it, as parties to the suit, some person capable of representing their interest?

2. And secondly, if it cannot, did the contrivance resorted to, of conveying to S. C. Ridgely and Proud, taken in connection with the admitted facts on that subject, enable the court to take jurisdiction of the case?

The learning on the subject of parties to suits in chancery is copious, and within a limited extent, the principles which govern their introduction are flexible. There is a class of persons having such relations to the matter in controversy, merely formal or otherwise, that while they may be called proper parties, the court will take no account of the omission to make them parties. There is another class of persons whose relations to the suit are such, that if their interest and their absence are formally brought to the attention of the court, it will require them to be made parties if within its jurisdiction, before deciding the case. But if this cannot be done, it will proceed to administer such relief as may be in its power, between the parties before it. And there is a third class, whose interests in the subject-matter of the suit, and in the relief sought, are so bound up with that of the other parties, that their legal presence as parties to the proceeding is an absolute necessity, without which the court cannot proceed. In such cases the court refuses to entertain the suit, when these parties cannot be subjected to its jurisdiction.

This class cannot be better described than in the language of this court, in *Shields* v. *Barrow*,\* in which a very able and satisfactory discussion of the whole subject is had. They are there said to be " persons who not only have an interest in the controversy, but an interest of such a nature, that a final decree cannot be made without either affecting that in-

---

\* 17 Howard, 130.

terest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience."

This language aptly describes the character of the interest of the Ridgelys, in the land of which partition is sought in this suit, and in the account which is asked for, of rents and profits. If a decree is made, which is intended to bind them, it is manifestly unjust to do this when they are not parties to the suit, and have no opportunity to be heard. But as the decree cannot bind them, the court cannot for that very reason afford the relief asked, to the other parties.

If, for instance, the decree should partition the land and state an account, the particular pieces of land allotted to the parties before the court, would still be undivided as to *these* parties, whose interest in each piece would remain as before the partition. And they could at any time apply to the proper court, and ask a repartition of the whole tract, unaffected by the decree in this case, because they can be bound by no decree to which they are not parties. The same observations apply to any account stated by the court, of rents and profits, and to any decree settling the amount due on that score.

Nor does the act of February 28th, 1839, relieve the case of the difficulty. That act has been frequently construed in this court, and perhaps never more pertinently to the matter in hand, than in the case already cited, of *Shields* v. *Barrow.*

The court there says, in relation to this act, that " it does not affect any case where persons having an interest are not joined, because their citizenship is such that their joinder would defeat the jurisdiction, and so far as it touches suits in equity, we understand it to be no more than a legislative affirmance of the rule previously established by the cases of *Cameron* v. *McRoberts,** *Osborn* v. *The Bank of the United States,†* and *Harding* v. *Handy.‡* . . . . The act says it shall be lawful for the court to entertain jurisdiction; but as is observed by this court in *Mallow* v. *Hinde,§* when speaking of a

---

* 3 Wheaton, 591.     † 9 Id. 738.     ‡ 11 Id. 132.     § 12 Id. 198.

case where an indispensable party was not before the court, 'we do not put this case upon the ground of jurisdiction, but upon a much broader ground, which must apply to all courts of equity, whatever may be their structure as to jurisdiction; we put it on the ground that no court can adjudicate directly upon a person's right, without the party being actually or constructively before the court;' so that while this act removed any difficulty as to jurisdiction between *competent* parties regularly served with process, it does not attempt to displace that principle of jurisprudence on which the court rested the case last mentioned. . . . . It remains true, notwithstanding the act of Congress and the forty-seventh rule, that a Circuit Court can make no decree affecting the rights of an absent person, and can make no decree between the parties before it, which so far involves or depends upon the rights of an absent person, that complete and final justice cannot be done between the parties to the suit, without affecting those rights."*

These views do not render the act of 1839 either useless or ineffectual, for while it is true that in reference to parties in chancery proceedings, that act only pronounced the rule which this court had previously asserted, its beneficial influence in cases of common law cognizance are often called into exercise. It is a rule of the common law, that where one of several joint obligors in a contract, whether verbal or in writing, is sued alone, he can plead the non-joinder of the other obligors in abatement, and in cases where the joint obligors not sued were citizens of the same State with the plaintiff, or were residents of some other district than that where the suit was brought, the jurisdiction of the court was defeated. This very serious difficulty was remedied by the act of 1839; for in such cases the plaintiff can now prosecute his suit to judgment against any one of such joint obligors, in any district where he may be found. Of this class of cases are *Inbusch* v. *Farwell*,† and others which preceded it.

---

* See also Northern Ind. R. R. Co. *v.* Michigan Central R. R. Co., 15 Howard, 233.

† 1 Black, 566.

But this rule does not conflict with that under which the courts of chancery act in refusing to make a decree, where by reason of the absence of persons interested in the matter, the decree would be ineffectual, or would injuriously affect the interest of the absent parties. In the class of cases just mentioned at common law, the plaintiff, by his judgment against one of his joint debtors, gets the relief he is entitled to, and no injustice is done to that debtor, because he is only made to perform an obligation which he was legally bound to perform before. The absent joint obligors are not injured, because their rights are in no sense affected, and they remain liable to contribution to their co-obligor who may pay the judgment by suit, as they would have been had he paid it without suit.

We are, therefore, of opinion that the Circuit Court could render no decree on the merits of this case, without having rightfully before it some person representing the interest of the Ridgelys.

This leads us to the second inquiry connected with the jurisdiction of the case, namely, whether the conveyances to Proud and S. C. Ridgely, who were citizens of Maryland, and were made defendants, removed the difficulty growing out of the residence of the Ridgelys in the District of Columbia?

In the case of *Hepburn* v. *Ellzey*,* it was decided by this court, speaking through Marshall, C. J., that a citizen of the District of Columbia was not a citizen of a State within the meaning of the Judiciary Act, and could not sue in a Federal court. The same principle was asserted in reference to a citizen of a territory, in the case of *New Orleans* v. *Winter*,† and it was there held to defeat the jurisdiction, although the citizen of the Territory of Mississippi was joined with a person who, if suing alone, could have maintained the suit. These rulings have never been disturbed, but the principle asserted has been acted upon ever since by

---

* 2 Cranch, 445.                    † 1 Wheaton, 91.

the courts, when the point has arisen.\* Indeed, the counsel for complainant seem to have conceded that the Ridgelys of the District could not become parties by their voluntary submission, and that their being parties deprived the court of jurisdiction, because they were dismissed from the suit after they had appeared and answered to the merits.

If the conveyance by the Ridgelys of the District to S. C. Ridgely of Maryland had really transferred the interest of the former to the latter, although made for the avowed purpose of enabling the court to entertain jurisdiction of the case, it would have accomplished that purpose. *McDonald* v. *Smalley*,† and several cases since, have well established this rule. But in point of fact that conveyance did not transfer the real interest of the grantors. It was made without consideration, with a distinct understanding that the grantors retained all their real interest, and that the deed was to have no other effect than to give jurisdiction to the court. And it is now equally well settled, that the court will not, under such circumstances, give effect to what is a fraud upon the court, and is nothing more. In the case of *Smith* v. *Kernochen*,‡ this court said, " The true and only ground of objection in all these cases is, that the assignor or grantor, as the case may be, is the real party in the suit, and the plaintiff on the record but nominal and colorable, his name being used merely for the purpose of jurisdiction. The suit is then, in fact, a controversy between the former and the defendants, notwithstanding the conveyance." And the court cites *McDonald* v. *Smalley*, already mentioned; *Maxfield's Lessee* v. *Levy*,§ *Hurst's Lessee* v. *McNeil*,‖ and *Briggs* v. *French*.¶

It is not possible to see how the case before us can be taken out of the principle here laid down. We are therefore of opinion that the Circuit Court had no jurisdiction of the case.

It follows that the decree of that court which, on its face,

---

\* Wescott *v.* Fairfield, Peters's Circuit Court, 45.   † 1 Peters, 620.

‡ 7 Howard, 216.   § 4 Dallas, 330.

‖ 1 Washington Circuit Court, 70.   ¶ 2 Sumner, 257.

appears to be a dismissal of the bill on the merits, must be reversed, and the case remanded, with directions to that court to enter a decree dismissing the bill for want of jurisdiction, and without prejudice to plaintiff's right to bring any suit she may be advised in the proper court.

Mr. Justice CLIFFORD, dissenting. Unable to concur in the opinion of the court, I will proceed to state very briefly the reasons of my dissent.

Consent, I agree, cannot give jurisdiction in a case where it is not conferred by the Constitution and the laws of Congress, but the judicial power as described in the Constitution, extends in express terms to controversies between citizens of different States.*

By the eleventh section of the Judiciary Act it is also provided that the Circuit Courts shall have exclusive cognizance, concurrent with the courts of the several States, of all suits of a civil nature at common law or in equity where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, and the suit is between a citizen of the State where the suit is brought and a citizen of another State.†

Complainant is a citizen of Delaware, and the respondents are citizens of Maryland, which brings the case within the express words of the Judiciary Act and of the Constitution.

Express decision of this court in *Hagan v. Walker et al.*,‡ is that since the act of the twenty-eighth of February, 1839, it does not defeat the jurisdiction of the court in a suit in equity, that a person named as defendant is not an inhabitant of, or found within, the district where the suit is brought.§

The court may still adjudicate between the parties who are properly before it, and the rule is that the absent parties are not to be concluded or affected by the decree. Cases may arise, say the court, in which the court cannot adjudi-

---

* Art. 3, sec. 2.                         † 1 Stat. at Large, 78.
‡ 14 Howard, 36.                          § 5 Stat. at Large, 821.

cate between the parties who are regularly before it, for the reason that it cannot bind those who are absent, as where relief cannot be given without taking an account between an absent party and one before the court. Defect of parties in such a case does not defeat the jurisdiction, strictly speaking, yet the court will make no decree in favor of the complainant.

Non-joinder of an absent party in such a case, not only does not defeat the jurisdiction of the court, but it does not raise any such question under the Constitution and the law of Congress, because the parties before the court being citizens of different States the jurisdiction of the court is undeniable. Relief will not be granted in such a case where it appears that the interests of absent parties will be injuriously affected; but the question is not one whether a Federal court has jurisdiction to hear and determine the cause. On the contrary, it is a question of equity practice as to parties, common to all courts exercising equity powers.

Such an objection is never allowed to prevail if the court can protect the interest of the absent party, or where it appears in the record that due notice was given to him, and that he has formally waived the objection. The maxim *volenti non fit injuria* applies in such a case, and consequently, the difficulty may be remedied by a conveyance or stipulation appearing in the record. Courts of equity refuse to grant relief in such cases, not because they have not jurisdiction, but only because the right of absent parties interested in the subject-matter may be injuriously affected. Hence the rule is that, if the court can grant relief without affecting such rights, or can protect those rights in the decree, the court will not dismiss the suit, and the same rule is applicable if it appears in the record that the absent parties have full knowledge of the controversy and that they have in due form of law waived all objections to the prosecution of the suit. Unless these views are correct, then it is clear that the act of the twenty-eighth of February, 1839, is unconstitutional and void, as no one will pretend that Congress can extend the jurisdiction of the Federal courts

beyond the power conferred in the Constitution.  Validity of that act of Congress is admitted in the opinion of the majority of the court, and it is also admitted that the decision of this court in the case of *Inbush* v. *Farwell**  is correct: Direct decision in that case was, that the jurisdiction of the Federal courts in a common law suit is not defeated by the suggestion that other parties are jointly liable with the defendants, provided it appears that such other parties are out of the jurisdiction of the court.

Under the Constitution and the Judiciary Act the conditions of jurisdiction are the same in a suit in equity as at common law, and it is not possible to distinguish the one from the other without adding language to those provisions which neither the framers of the Constitution nor Congress ever employed.

For these reasons I am of the opinion that the Circuit Court had jurisdiction of the case, but the majority of the court are of a different opinion, which renders it unnecessary to enter upon the consideration of the merits.

The CHIEF JUSTICE and FIELD, J., also dissented.